UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| In re:<br><br>BLUE THUNDER AUTO TRANSPORT, INC.<br><br>　　　　　Debtor. | Case No. 07-61268<br>Chapter 11<br>Judge Bonapfel |
| CAL-TEX AUTO MOVERS, INC., SUPREME AUTO TRANSPORT, INC., NORTHSIDE TRANSPORTATION, LLC, PENTA AUTO TRANSPORT, INC. and CONTINENTAL TRANSPORT, INC,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, NATIONAL ASSOCIATION and WELLS FARGO BUSINESS CREDIT, INC.,<br><br>　　　　　Defendants. | Adversary No. _____ |

**COMPLAINT OF CAL-TEX AUTO MOVERS, INC., SUPREME AUTO TRANSPORT, INC., NORTHSIDE TRANSPORTATION, LLC, PENTA AUTO TRANSPORT, INC. AND CONTINENTAL TRANSPORT, INC. FOR DECLARATORY JUDGMENT, DISGORGEMENT AND NEGLIGENCE AGAINST DEFENDANTS WELLS FARGO BANK, NATIONAL ASSOCIATION AND WELLS FARGO BUSINESS CREDIT, INC.**

COMES NOW, Cal-Tex. Auto Movers, Inc. ("Cal-Tex"), Supreme Auto Transport, Inc. ("Supreme"), Northside Transportation, LLC ("Northside"), Penta Auto Transportation, LLC ("Penta") and Continental Transport, Inc. ("Continental") collectively referred to herein as "Plaintiffs" and state their Complaint against Defendants Wells Fargo Bank, National Association and Wells Fargo Business Credit, Inc. ("Defendants") as follows:

349548.1

## INTRODUCTION

Plaintiffs are federally licensed motor carriers.  Debtor Blue Thunder Logistics, Inc. ("BTL") is a federally licensed transportation broker that arranged for the transportation of automobiles on behalf of certain automobile manufacturers ("Manufacturers").  BTL assigned loads of automobiles to the Plaintiffs, collected freight payments from the Manufacturers and was supposed to remit freight payment to the Plaintiffs, less BTL's brokerage fee.  Federal regulations required BTL to maintain detailed records of all funds it received, segregate such funds from its other business activities and to remit payment of freight charges to the Plaintiffs as an agent of the Manufacturers.  Defendants claim a security interest in funds that BTL received from Manufacturers for payment Plaintiffs' freight charges.  Plaintiffs seek: (1) a declaratory judgment that these funds are not collateral subject to Defendants' security interest because BTL had not earned the funds and was holding them as a mere conduit; (2) a constructive trust and an order directing Defendants to disgorge the freight payments to the Plaintiffs; and (3) damages from Defendants for their negligence.

## JURISDICTION

1. The Court has jurisdiction to adjudicate this matter pursuant to 28 U.S.C. § 1334.  This adversary proceeding is properly before the Court pursuant to 28 U.S.C. § 157.  This action is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(K) and (O).

2. Pursuant to Order of the Court and Fed. R. Bankr. P. 4004(a) & 4007(c), April 25, 2007 is the last day to file a Complaint to challenge the validity, extent or priority of Defendants' Pre-Petition Lien on Debtors' Pre-Petition assets.  Therefore, this Complaint has been timely filed.

## PARTIES

3. Defendant Wells Fargo Bank National Association is a national banking association formed and existing under the laws of the State of California that is subject to the jurisdiction of this Court. This Defendant may be served via its registered agent for service of process, Corporation Service Company, 40 Technology Parkway South, Suite 300, Norcross, Georgia 30092.

4. Defendant Wells Fargo Business Credit, Inc. is a corporation formed and existing under the laws of the State of Minnesota that is subject to the jurisdiction of this Court. This Defendant may be served with process at its principal office, 90 South Seventh Street, Minneapolis, Minnesota 55479.

5. Plaintiff Cal-Tex is a corporation formed and existing under the laws of the State of Texas with a principal place of business located in Brownsville, Texas. Plaintiff is a federally licensed motor carrier (Docket Number 480171) in the business of transporting cargo for hire in interstate commerce.

6. Plaintiff Supreme is a corporation formed and existing under the laws of the State of Oklahoma with a principal place of business located in Longmont, Colorado. Plaintiff is a federally licensed motor carrier (Docket Number 395285) in the business of transporting cargo for hire in interstate commerce.

7. Plaintiff Northside is a limited liability company formed and existing under the laws of the State of Tennessee with a principal place of business located in Gallatin, Tennessee. Plaintiff is a federally licensed motor carrier (Docket Number 402956) in the business of transporting cargo for hire in interstate commerce.

8. Plaintiff Penta is a corporation formed and existing under the laws of the State of Florida with a principal place of business located in Fort Lauderdale, Florida. Plaintiff is a federally licensed motor carrier (Docket Number 517405) in the business of transporting cargo for hire in interstate commerce.

9. Plaintiff Continental is a corporation formed and existing under the laws of the State of Colorado with a principal place of business located in Brighton, Colorado. Plaintiff is a federally licensed motor carrier (Docket Number 212801) in the business of transporting cargo for hire in interstate commerce.

10. BTL is a corporation formed and existing under the laws of the State of Minnesota with a principal place of business located at 5070 Old Ellis Pointe, Suite B, Roswell, Georgia 30076. BTL is a federally licensed property broker (Docket Number 517025) in the business of soliciting loads of cargo from shippers and assigning them to motor carriers like the Plaintiffs.

11. Debtor Blue Thunder Auto Transport, Inc. ("BTT") is a corporation formed and existing under the laws of the State of Minnesota with a principal place of business located at 5070 Old Ellis Pointe, Suite B, Roswell, Georgia 30076. BTT is a federally licensed motor carrier (Docket Number 517003).

12. BTL and BTT share a common parent company, Auto Carrier Holding Incorporated.

**FACTS**

13. BTL and BTT were formed on or before March 31, 2005.

14. BTL was formed to operate as a transportation broker as that term is defined in 49 U.S.C. § 13102(2). A transportation broker is a person who, for compensation, arranges, or offers to arrange, the transportation of property by an authorized motor carrier.

15. A broker's activities are classified in two (2) categories: (a) brokerage service, which is the arranging of transportation or the physical movement of property; and (b) non-brokerage services, which are all other services performed by a broker on behalf of a motor carrier, consignor or consignee.

16. Federal regulations impose a duty on BTL keep a record of each transportation transaction. These records must include the name and address of each consignor, the name, address and registration number of the originating motor carrier, the bill of lading or freight bill number, the amount of compensation received by the broker for the brokerage service performed, the name of the payor, a description of any non-brokerage services performed and compensation paid for the same, the amount of freight charges collected by the broker and the date of payment of freight charges to the carrier.

17. Federal regulations provide that any party to a brokered transaction has a right to review the records of the transaction that the broker is required to keep.

18. Federal regulations provide that when a broker acts on behalf of a person bound by law or regulation as to making payments, the broker must also abide the same laws or regulations. Specifically, because a broker's principal is obligated to pay motor carriers for transportation services, the broker is obligated to remit freight payments it receives from its principals to motor carriers.

19. Federal regulations provide that any broker who engages in any other business shall maintain accounts so that the revenues and expenses relating to the brokerage portion of its business are segregated from its other activities.

20. Federal regulations prohibit a broker from misrepresenting the nature of its services. Specifically, a broker cannot represent that it is a motor carrier that actually performs transportation services.

21. At all times prior to January 30, 2007, BTL provided brokerage and non-brokerage services to Manufacturers.

22. On or about April 15, 2005 BTL, BTT and a third related company (the "Borrowers") entered into a financing transaction with Defendants.

23. As part of the financing transaction, Borrowers and Defendants entered into a Credit and Security Agreement (the "Security Agreement"), relevant portions of which are attached hereto as Exhibit 1 and incorporated herein by reference.

24. Section 3.1 of the Security Agreement provides in part that Borrowers granted Defendants "a lien and security interest (collectively referred to as the "Security Interests") in the Collateral, as security for the payment and performance of the Obligations." Exhibit 1, p. 30.

25. Section 1.1 of the Security Agreement defines "Collateral" as "all of each Borrower's Accounts, chattle paper and electronic chattle paper, deposit accounts, documents, Equipment, General Intangibles, goods, instruments, Inventory, Investment Property, letter-of-credit rights, letter of credit, all sums on deposit in any Collateral Account, and any items in any lockbox; together with . . . (vi) any money, or other assets of each

borrower that now or hereafter comes into possession, custody, or control of the [Defendants] . . . ." Exhibit 1, p. 4.

26. Section 1.1 of the Security Agreement defines "Accounts" as meaning "as to each Borrower, such Borrower's accounts, as such term is defined in the UCC, including each and every right of such borrower to the payment of money, whether such right to payment now exists or hereafter arises, whether such right to payment arises out of a sale, lease or other disposition of goods or other property, out of rendering services, out of a loan, or out of the overpayment of taxes or other liabilities, or otherwise arises under any contract or agreement, whether such right to payment is created, generated or earned by such Borrower or by some other person who subsequently transfers such person's interest to such Borrower, whether such right to payment is or is not already earned by performance and howsoever such right to payment may be evidenced, together with all other rights and interests (including all Liens) which such Borrower may at any time have by law or agreement against any account debtor or other obligor obligated to make any such payment or against any property of such account debtor or other obligor; all including but not limited to all present and future accounts, contract rights, loans and obligations receivable, chattle paper, bonds, notes and other debt instruments, tax refunds and rights to payment in the nature of general intangibles." Exhibit 1, p. 1.

27. Freight payments from the Manufacturers do not constitute an Account of BTL because BTL acted as a mere conduit for these payments which, under federal law, must be "earmarked" for each motor carrier that earned them. For this reason, freight

payments were not BTL's property and cannot constitute Collateral subject to Defendants' security interest.

28. Plaintiff Cal-Tex entered into a Master Transportation Contract with BTL on or about March 15, 2006, a true and correct copy of which is attached hereto as Exhibit 2 and incorporated herein by reference.

29. Plaintiff Cal-Tex provided transportation services for Manufacturers at BTL's request pursuant to the terms of this agreement.

30. Plaintiff Supreme entered into a Master Transportation Contract with Swift Transportation, Corp. ("Swift") on September 1, 2004. Swift assigned this contract to BTT and its affiliates (i.e., BTL). Copies of this contract and the assignment are attached hereto as Exhibit 3 and incorporated herein by reference.

31. Plaintiff Supreme provided transportation services for Manufacturers at BTL's request pursuant to the terms of this agreement.

32. Plaintiff Northside entered into a Master Transportation Contract with Swift Transportation, Corp. ("Swift") on January 19, 2004. Upon information and belief, Swift assigned to this contract to BTT and/or BTL at the time Swift sold certain assets to BTT, BTL, their affiliates and parent company. A copy of this contract is attached hereto as Exhibit 4 and incorporated herein by reference.

33. Plaintiff Northside provided transportation services for Manufacturers at BTL's request pursuant to the terms of this agreement.

34. Plaintiff Penta entered into a Master Transportation Contract with BTL on or about February 13, 2006, a true and correct copy of which is attached hereto as Exhibit 5 and incorporated herein by reference.

35. Plaintiff Penta provided transportation services for Manufacturers at BTL's request pursuant to the terms of this agreement.

36. Plaintiff Continental provided transportation services for Manufacturers at BTL's request from time to time without entering into a written contract with BTL.

37. Under the terms of the respective contracts, BTL was obligated to collect freight payments from the manufacturers and to remit them to the Plaintiffs at specified rates upon completion of transportation and related services.

38. BTL would receive freight payments owed to the Plaintiffs from the Manufacturers. BTL, however, failed to segregate these payments from other funds it and its affiliates received as required by federal regulations. Rather, under the terms of the respective loan documents, all funds transferred to BTL by Manufacturers were deposited in a lockbox account maintained with the Defendants. Defendants would sweep all funds out of the lockbox account each night. Defendants would then advance operating funds from a line of credit to BTL and its affiliates.

39. Upon information and belief, Defendants required that BTL agree to the lock box and sweep arrangements for BTL's bank accounts as a condition for extending credit to BTL, BTT and other affiliated debtors.

40. The freight charges remitted to BTL by Manufacturers and deposited into the lockbox account had not been earned by BTL for services it provided. BTL instead held

these funds as a payment agent for the Manufacturers. BTL had a duty to remit these payments to the Plaintiffs pursuant to 49 C.F.R. § 371.10.

41. Upon information and belief, BTL failed to maintain any of the accounting records required by federal regulations to account for and trace monies it received from Manufacturers for payment of freight charges.

42. Upon information and belief, BTL failed to segregate the freight payments from the Manufacturers from its brokerage fees and monies earned by its affiliates such as BTT.

43. Beginning in the last two (2) quarters of 2006 and continuing into January of 2007, BTL failed to remit all freight payments it received from Manufacturers to the Plaintiffs. These funds were instead retained by the Defendants under the terms of the loan agreements by and between BTL, its affiliates and the Defendants.

44. As of January 30, 2007, BTL had failed to remit $276,199.25 of freight payments it had received from Manufacturers to Plaintiff Cal-Tex.

45. As of January 30, 2007, BTL had failed to remit $164,724.59 of freight payments it had received from Manufacturers to Plaintiff Supreme.

46. As of January 30, 2007, BTL had failed to remit $116,494.61 of freight payments it had received from Manufacturers to Plaintiff Northside.

47. As of January 30, 2007, BTL had failed to remit $157,617.22 of freight payments it had received from Manufacturers to Plaintiff Penta.

48. As of January 30, 2007, BTL had failed to remit $76,858.03 of freight payments it had received from Manufacturers to Plaintiff Continental.

49. Upon information and belief, Manufacturers have delivered to BTL all of the funds owed to the Plaintiffs as set forth in the foregoing paragraphs.

50. Defendants are in possession of these funds pursuant to their loan agreements with BTL and Defendants claim these funds by virtue of a purported valid, first position security interest in these funds.

## COUNT ONE
### (Declaratory Judgment)

51. Plaintiffs incorporate the foregoing paragraphs of this Complaint herein by reference.

52. Defendants claim a right to funds delivered to BTL by the Manufacturers by virtue of the terms of the Security Agreement.

53. An actual controversy exists as to the extent and validity of Defendants' security interest.

54. Specifically, Defendants' security interest is limited to those items or things that are defined as "Collateral" in section 1.1 of the Security Agreement.

55. "Collateral" is defined by the Security Agreement as "all of each Borrower's Accounts, chattle paper and electronic chattle paper, deposit accounts, documents, Equipment, General Intangibles, goods, instruments, Inventory, Investment Property, letter-of-credit rights, letter of credit, all sums on deposit in any Collateral Account, and any items in any lockbox; together with . . . (vi) any money, or other assets of each borrower that now or hereafter comes into possession, custody, or control of the [Defendants] . . . ." Exhibit 1, p. 4.

56. "Accounts" is defined in the Security Agreement as meaning "as to each Borrower, such Borrower's accounts, as such term is defined in the UCC, including each and

349548.1

- 11 -

every right of such borrower to the payment of money, whether such right to payment now exists or hereafter arises, whether such right to payment arises out of a sale, lease or other disposition of goods or other property, out of rendering services, out of a loan, or out of the overpayment of taxes or other liabilities, or otherwise arises under any contract or agreement, whether such right to payment is created, generated or earned by such Borrower or by some other person who subsequently transfers such person's interest to such Borrower, whether such right to payment is or is not already earned by performance and howsoever such right to payment may be evidenced, together with all other rights and interests (including all Liens) which such Borrower may at any time have by law or agreement against any account debtor or other obligor obligated to make any such payment or against any property of such account debtor or other obligor; all including but not limited to all present and future accounts, contract rights, loans and obligations receivable, chattel paper, bonds, notes and other debt instruments, tax refunds and rights to payment in the nature of general intangibles." Exhibit 1, p. 1.

57. The funds delivered to BTL by the Manufacturers for payment of Plaintiffs' freight charges does not constitute "Collateral."

58. Specifically, freight payments that the Manufacturers have yet to deliver to BTL do not constitute an Account of BTL because BTL has not earned these freight payments and has a duty under applicable federal regulations to transmit the freight payments to the Plaintiffs as an agent of the Manufacturers.

59. Specifically, freight payments from Manufacturers that have been deposited into BTL's depository account(s), any "Collateral Account" or lockbox account do not constitute "Collateral" because: (a) they are not property of BTL, but rather the property of the Plaintiffs

which BTL holds as a conduit; and (b) federal regulations require that BTL segregate such payments from its other operations and the operations of its affiliates.

60. Specifically, any term in the loan agreements by and between BTL and Defendants requiring deposit of freight payments from Manufacturers into accounts controlled by Defendants is <u>ultra vires</u> and unenforceable in that they violate federal regulations intended to protect motor carriers' right to payment for their services.

61. Specifically, any term in the loan agreements by and between BTL and Defendants purporting to grant Defendants a security interest in freight payments delivered to BTL by the Manufacturers for payment to Plaintiffs is <u>ultra vires</u> and unenforceable in that it violates federal regulations intended to protect motor carriers' right to payment for their services.

62. Plaintiffs therefore request that this Court enter a declaratory judgment that Defendants have no security interest in any funds that Manufacturers have not yet delivered to BTL for payment of freight charges owed to Plaintiffs.

63. Plaintiffs therefore request that this Court enter a declaratory judgment that Defendants have no security interest in any funds that Manufacturers have delivered to BTL for payment of freight charges owed to Plaintiffs.

### COUNT TWO
### (Constructive Trust; Disgorgement)

64. Plaintiffs incorporate the foregoing paragraphs of the Complaint herein by reference.

65. Each of the transportations contracts by and between Plaintiffs and BTL provides that Arizona law will govern the contract.

66. Defendants had actual or constructive knowledge of this term of the transportation agreement based on their actual due diligence and their ability to perform due diligence before extending credit to BTL.

67. Arizona law provides that a constructive trust arises by operation of law and is imposed when property is acquired under inequitable circumstances resulting in unjust enrichment of one at the expense of another.

68. A constructive trust is imposed to compel one who unfairly holds a property interest to convey that interest to whom it justly belongs.

69. A constructive trust is warranted under Arizona law when there is actual or constructive fraud that inequitably deprives a party of its property.

70. All of the Plaintiffs relied upon the existence of the regulations set forth in 49 C.F.R. § 371, et seq., which provide in part that a broker like BTL will not misrepresent itself as a motor carrier, will segregate freight payments from shippers from its other operations, will maintain specified accounting records and will remit payments from shippers to motor carriers.

71. Defendants, which are part of a network of sophisticated multi-billion dollar banks with offices around the world, were on notice of the clear obligations imposed on its customer, BTL, by virtue of the publication of the applicable regulations in the Code of Federal Regulations.

72. None of the Plaintiffs was on notice of the terms of BTL's loan agreements with Defendants which purported to give Defendants a security interest in freight payments delivered to BTL by Manufacturers.

73. BTL and Defendants committed a constructive fraud on the Plaintiffs by conspiring to deliver all freight payments from Manufacturers to Defendants.

74. Specifically, Defendants chose to ignore the law to gain an advantage by structuring a loan transaction which violated federal regulations by requiring freight payments owed to the Plaintiffs to be delivered to a lockbox account and swept out of BTL's account on a daily basis.

75. Specifically, Defendants exercised dominion and control over BTL's financial affairs by limiting BTL's access to the freight payments. All funds deposited into BTL's account(s) were swept every night. Defendants then determined how much money they would advance to BTL each day for BTL's operating expenses. This arrangement gave Defendants complete control over the use of the freight payments from Manufacturers which belonged to the Plaintiffs. Plaintiffs had no notice that their property was being diverted to the Defendants. Defendants used their control to benefit themselves by retaining freight payments which should have been paid to the Plaintiffs.

76. BTL and Defendants' constructively fraudulent actions have deprived Plaintiffs of their property without justification or excuse.

77. Defendants will be unjustly enriched if they are allowed to keep the freight payments from the Manufacturers.

78. Equity requires that this Court impose a constructive trust on all freight payments from the Manufacturers for the Plaintiffs' services that were delivered to the Defendants but remain unpaid to Plaintiffs in order to prevent the unjust enrichment of the Defendants.

79. Plaintiffs request that this Court enter an order finding that freight payments delivered to the Defendants that have not been paid to the Plaintiffs are subject to a constructive trust and directing Defendants to disgorge such freight payments to the Plaintiffs.

## COUNT THREE
### (Negligence)

80. Plaintiffs incorporate the foregoing paragraphs of the Complaint herein by reference.

81. Defendants owed a duty of care to Plaintiffs to either ensure that BTL remitted freight payments it received from Manufacturers as required by 49 C.F.R. § 371, et seq., or that Defendant remitted the freight payments from the Manufacturers.

82. Specifically, Defendants were on notice of BTL's obligation to pay freight charges as set forth in 49 C.F.R § 371.10 by virtue of the publication of the Code of Federal Regulations.

83. Specifically, Defendants were or should have been aware of the nature of their customer's business as an intermediary or conduit that arranged for transportation services on behalf of its principals, the Manufacturers.

84. Specifically, Defendants were or should have been aware that BTL would receive freight payments from Manufacturers that must be delivered to motor carriers like the Plaintiffs.

85. Specifically, Defendants were on notice that freight payments delivered to BTL were not BTL's property. Rather, BTL acted as a conduit for the transmission of freight payments from the Manufacturers to the Plaintiffs.

86. Specifically, having notice of the applicable federal regulations, the nature of its customer's business model and that the freight payments were not BTL's property, Defendants chose to enter into a financing transaction whereby all freight payments would be swept out of BTL's account every night and held by the Defendants. Defendants would then advance funds to BTL against a line of credit for BTL's operating expenses.

87. By taking complete control over all freight payments delivered to BTL, and by retaining complete control over the amount of operating capital available to BTL, Defendants assumed a duty of care to insure that BTL was making payment to the Plaintiffs.

88. By taking complete control over all freight payments delivered to BTL, and by retaining complete control over the amount of operating capital available to BTL, Defendants assumed a duty of care to remit freight payment received from Manufacturers to the Plaintiffs.

89. Defendants breached their duties of care to the Plaintiffs.

90. Defendants' breach of their duties of care has caused Plaintiff Cal-Tex to suffer damages of not less than $276,199.25.

91. Defendants' breach of their duties of care has caused Plaintiff Supreme to suffer damages of not less than $164,724.59.

92. Defendants' breach of their duties of care has caused Plaintiff Northside to suffer damages of not less than$116,494.61.

93. Defendants' breach of their duties of care has caused Plaintiff Penta to suffer damages of not less than $157,617.22.

94. Defendants' breach of their duties of care has caused Plaintiff Continental to suffer damages of not less than $76,858.03.

WHEREFORE, Plaintiffs respectfully request that this Court:

a. enter a declaratory judgment that Defendants have no security interest in freight payments that Manufacturers owe for services provided by Plaintiffs but have not yet paid;

b. enter a declaratory judgment that Defendants have no security interest in freight payments that Manufacturers paid to BTL for services provided by Plaintiffs;

c. impose a constructive trust on all freight payments delivered to BTL and retained by Defendants;

d. order Defendant to disgorge all freight payments in Defendants' possession that are subject to the declaratory judgment and the constructive trust;

e. Enter judgment in favor of the Plaintiffs, individually, and against the Defendants in the following principal amounts:

    i. Plaintiff Cal-Tex: $276,199.25;

    ii. Plaintiff Supreme: $164,724.59;

    iii. Plaintiff Northside: $116,494.61;

    iv. Plaintiff Penta: $157,617.22; and

    v. Plaintiff Continental: $76,858.03.

f.  tax all costs against the Defendants;

g.  award prejudgment interest and post-judgment interest; and

h.  grant the Plaintiffs all other relief the Court deems just and proper.

This 25th day of April, 2007.

**THOMERSON SPEARS & ROBL LLC**

/s/ Robert E. Spears, Jr.
Robert E. Spears, Jr
Georgia Bar No. 670195
Attorney for Plaintiff

/s/ Michael D. Robl
Michael D. Robl
Georgia Bar No. 610905
Attorney for Plaintiffs

104 Cambridge Ave
Decatur, GA 30030
Phone: (404) 373-5150
Facsimile: (404) 373-5199
respears@tsrlaw.com
www.tsrlaw.com